# Exhibit B

# JOINT VENTURE AGREEMENT

THIS JOINT VENTURE AGREEMENT (this "Agreement") is made as of October 6, 2020 (the "Effective Date"), by and among Fearless Studios, Inc ("Fearless"), a Delaware corporation, and SuperGroup, Inc. (the "Company"), a Tennessee corporation, and Gary Bridges, an individual residing at 1556 Stokely Lane Old Hickory, TN 37138 ("Bridges", together with the Company, "SuperGroup").

## WITNESSETH

**WHEREAS**, pursuant to the terms and conditions set forth in this Agreement, Fearless and SuperGroup desire to enter into a joint venture pursuant to which Fearless will be the exclusive producer, distributor, marketer and manager of the television show known as "American Supergroup" or any derivate or successor thereof (collectively, "Project SuperGroup"); and

**WHEREAS**, SuperGroup is the owner of certain intellectual property (the "Intellectual Property"), including: (i) the registered trademark American Supergroup, Registration No. 4705484 (the "Trademark") for use in connection with Project SuperGroup, in all capacities, and (ii) the website URL americansupergroup.com (the "Website") and all intellectual property in connection with the Website.

**NOW THEREFORE**, in consideration of the premises and the respective obligations and covenants set forth herein, the parties agree as follows:

1. **Recitals:**

    The Recitals stated above are hereby incorporated herein by reference as though set forth herein in their entirety.

2. **Joint Venture:**

    The parties agree to enter into a joint venture pursuant to which Fearless will be the exclusive producer, distributor, marketer, and manager of Project SuperGroup (collectively, the "Business"), pursuant to and in accordance with the terms and conditions of this Agreement.

3. **Contribution and Use of the Intellectual Property; Change of Control:**

    (a) Subject to the terms, provisions and conditions of this Agreement, SuperGroup agrees to contribute the Intellectual Property, including without limitation the Trademark, to the joint venture contemplated by this Agreement for use on an exclusive basis by the joint venture for the Business. SuperGroup agrees not to use the Trademark in connection with anything other than the Business solely pursuant to and in accordance with this Agreement.

    (b) If, during the Term of this Agreement, there is a sale of all or substantially all of the

1

assets of SuperGroup, or SuperGroup undergoes a Change of Control, all rights, title and interest in the Intellectual Property shall be transferred, conveyed and assigned to Fearless, and SuperGroup shall take all actions necessary to effectuate such transfer, conveyance and/or assignment. For purposes of this Agreement, "Change of Control" shall mean the sale, transfer or other disposition, in a single transaction or series of related transactions, by SuperGroup or any of its shareholders of a majority of the outstanding capital stock (including options and other convertible securities on an as-exercised or as-converted basis, as applicable) of SuperGroup, except where Gary Bridges owns a majority of the voting power of the outstanding shares of the surviving or acquiring company.

4. **Management and Services**:

   (a) The property, business and affairs of the joint venture shall be managed exclusively and solely by Fearless. Fearless shall have full authority, power and discretion to make all decisions with respect to the joint venture and the Business, including without limitation: (i) the engagement and termination of employees, vendors, consultants and other personnel relating to, among other things, the promotion of Project SuperGroup, including, without limitation, web designers, marketing consultants, and public relations firms, and (ii) any decisions concerning the use of the Intellectual Property in the promotion and/or production of the Business and/or Project SuperGroup.

   (b) In addition to the foregoing, subject to the terms and conditions of this Agreement, Fearless shall arrange for or facilitate the performance of additional services on behalf of the joint venture as may be reasonably necessary, in its discretion, including without limitation, marketing, advertising, sales and outside legal services, which shall be paid for directly by or on behalf of the joint venture.

5. **Costs and Expenses**:

   (a) Fearless agrees that it shall be responsible for the handling and payment of all costs and expenses and the management of the Business, including without limitation production, marketing, distribution, legal, and accounting. Each party hereto acknowledges and agrees that all expenses set forth in this Section 5 and elsewhere in this Agreement, or otherwise incurred by the joint venture, shall be satisfied by Fearless through the funds of the joint venture.

   (b) In the event that Fearless uses its own funds in connection with the performance of the services pursuant to this Agreement, Fearless shall be permitted to promptly reimburse itself from the funds of the joint venture for any such expenses reasonably incurred.

6. **Revenue Distribution**:

Cash Available for Distribution shall be distributed monthly, or at such other time as may be determined by Fearless, in its discretion, as follows: sixty percent (60%) of such Cash Available for Distribution shall be paid to Fearless, and forty percent (40%) of such Cash Available for Distribution shall be paid to SuperGroup. For purposes of this Agreement, "Cash Available for Distribution," as of any date, shall mean the excess of (a) all revenues received by the joint venture from its operations related to the Business over (b) total current operating expenses and reasonable reserves for future operating expenses related to the Business, as determined from time to time by Fearless. Each party hereto agrees that all revenue generated in connection with this Agreement shall be paid to Fearless, and Fearless shall distribute such monies in accordance with the terms of this Section 7.

7. **Term:**

   The term of this Agreement shall commence on the Effective Date and will continue until the mutual written consent of the parties hereto (the "Term").

8. **Indemnification:**

   Fearless, on the one hand, and SuperGroup and Gary Bridges, jointly and severally on the other hand, agree to indemnify and hold harmless each other and each other's respective officers, directors, shareholders, members, managers, employees and agents, against any and all claims, liabilities, damages or other expenses (including reasonable attorney's fees) that may result from any claim, third party or otherwise, if and to the extent proximately caused by the indemnifying party's breach of, or failure to perform under, this Agreement, or any negligent or intentionally wrongful act or omission by the indemnifying party.

9. **Confidential Information:**

   (a) Each of Fearless and SuperGroup will not, during or subsequent to the term of this Agreement: (i) use Confidential Information (as defined herein) for any purpose whatsoever other than the performance of the transactions contemplated in this Agreement, or (ii) disclose Confidential Information to any third party without the other party's prior written approval; provided, however, in each such case, Fearless shall be able to use and disclose such Confidential Information as necessary to permit Fearless to render the services pursuant to this Agreement. Each of Fearless and SuperGroup agree to take all reasonable precautions to prevent any unauthorized disclosure of such Confidential Information.

   (b) For purposes of this Section 9, "Confidential Information" means any non-public information that relates to the actual or anticipated business or research and development of the Business, Fearless or SuperGroup, technical data, trade secrets or know-how, including, but not limited to, research, product plans or other information regarding the Business' or Fearless' and/or SuperGroup's products or services and markets therefor, customer lists and customers (including, but not limited to, customers of Fearless and/or SuperGroup and/or the Business with whom either party

3

became acquainted during the term of this Agreement or otherwise), software, developments, inventions, processes, formulas, technology, designs, drawing, engineering, hardware configuration information, marketing, finances or other business information. Confidential Information does not include information that (i) is known to either party at the time of disclosure to such party, (ii) has become publicly known and made generally available through no wrongful act of the receiving party, (iii) has been rightfully received by the receiving party from a third party who is authorized to make such disclosure, or (iv) the receiving party can prove was independently conceived or discovered by the receiving party or its employees without reference to or use of the disclosing party's Confidential Information. Notwithstanding the foregoing, nothing in this Agreement shall grant to SuperGroup the right to request, review or access Fearless' books and records or other Confidential Information of Fearless.

10. **Representations and Warranties of Fearless.**

    (a) Fearless is a corporation duly organized, validly existing and in good standing under the laws of the State of Delaware. Fearless has the full company power and authority to execute and deliver this Agreement and to consummate the transactions contemplated by this Agreement.

    (b) Fearless has full power and authority to execute and deliver this Agreement and all other documents required to be executed and delivered by Fearless, to consummate the transactions hereby contemplated, and to take all other actions required to be taken by such party pursuant to the provisions hereof. This Agreement and all other documents required hereby have been duly executed and delivered by Fearless, are valid and binding upon Fearless and enforceable against Fearless in accordance with their respective terms, except to the extent the enforcement hereof may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws generally affecting the rights of creditors and subject to general equity principles and equitable remedies.

11. **Representations and Warranties of SuperGroup.**

    (a) Other than as set forth on <u>Schedule 11(a)</u>, the Company is a corporation duly organized, validly existing and in good standing under the laws of the State of Tennessee. The Company has the full corporate power and authority to execute and deliver this Agreement and to consummate the transactions contemplated by this Agreement.

    (b) SuperGroup has full power and authority to execute and deliver this Agreement and all other documents required to be executed and delivered by SuperGroup, to consummate the transactions hereby contemplated, and to take all other actions required to be taken by such party pursuant to the provisions hereof. This Agreement and all other documents required hereby have been duly executed and delivered by SuperGroup, are valid and binding upon SuperGroup and enforceable against

4

SuperGroup in accordance with their respective terms, except to the extent the enforcement hereof may be limited by applicable bankruptcy, insolvency, reorganization, moratorium or similar laws generally affecting the rights of creditors and subject to general equity principles and equitable remedies.

(c) SuperGroup is the owner of the Intellectual Property and has sufficient authority to contribute the Intellectual Property to the joint venture pursuant to this Agreement.

(d) SuperGroup has not entered into any additional licenses or other arrangements that may limit SuperGroup's rights or the rights of the joint venture or Fearless under this Agreement, or which may reasonably lead to a claim of infringement or invalidity regarding the any portion of the Intellectual Property or its use.

(e) SuperGroup has no knowledge of infringement of, or conflict with, any license or other intellectual property right of any other third party and there is no known claim pending, filed or threatened against SuperGroup of infringement, interference or invalidity regarding the Intellectual Property or its use.

(f) Other than as set forth on Schedule 11(f), there is no litigation, arbitration or other proceeding or governmental investigation pending or threatened, against SuperGroup, or which could impair or have a material adverse effect on SuperGroup's ability to execute, deliver and perform its obligations hereunder.

(g) Other than as set forth on Schedule 11(g), SuperGroup is not in violation of any applicable law, regulation, ordinance, or any other requirement of any governmental body or court, including without limitation, any of such relating to environmental, pollution or health matters, which violation would have a material adverse effect on the Business. No notice has been received by SuperGroup alleging any such violation.

## 12. Infringement; Enforcement; Maintenance.

(a) SuperGroup agrees that it will not do or permit any act or thing that would endanger any proprietary right of the joint venture and/or Fearless with respect to the Intellectual Property contributed pursuant to this Agreement. SuperGroup agrees to cooperate with Fearless in registering, protecting and defending the Intellectual Property, including, but not limited to, if so requested by Fearless on behalf of the joint venture, executing and filing any and all documents and papers necessary or advisable in order to register or protect the Intellectual Property, including without limitation, this Agreement or an abstract hereof.

(b) Each party shall provide written notice to the other party of any alleged infringement by a third party of the Intellectual Property promptly after a party becomes aware thereof.

5

(c) Fearless may prosecute, on behalf of, and at the expense of, the joint venture, any infringement of the Intellectual Property. Fearless shall control any such proceeding and SuperGroup shall cooperate with Fearless.

(d) During the Term of this Agreement, SuperGroup will take all action necessary or advisable to maintain the Intellectual Property in full force and effect, including without limitation the Trademark, that are necessary and/or material (as determined by SuperGroup and/or Fearless in good faith) to the conduct of the Business and/or Project SuperGroup.

### 13. Governing Law and Venue:

This Agreement shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to its conflict of law principles. Any action arising out of this Agreement or the claimed breach thereof shall only be brought in a court of competent jurisdiction in Nassau County, New York, and the Parties hereto hereby consent to personal jurisdiction and venue in such courts.

### 14. Assignment; Binding Effect:

No party to this Agreement shall have the right to assign, sub-license, delegate or otherwise transfer all or any of their respective rights, duties and/or obligations contained within this Agreement without the prior written consent of the respective parties hereto, which consent can be withheld for any reason or for no reason whatsoever; provided, however, Fearless shall be permitted to assign this Agreement to any affiliate thereof or to any successor or assignee of its business without obtaining the prior written consent of SuperGroup. This Agreement will inure to the benefit of and be binding upon the parties and their respective successors and assigns.

### 15. Disclaimer of Third Party Beneficiaries:

This Agreement is intended solely for the benefit of the parties hereto and no right or no cause of action shall accrue by reason hereof, to or for the benefit of any third party not a party hereto. Nothing in this Agreement, expressed or implied, is intended or shall be construed to confer upon or give any person or entity any right, remedy, or claim under or by reason of this Agreement or any provisions or conditions hereof, other than the parties hereto.

### 16. Severability:

If any part of this Agreement is found invalid or unenforceable by any court of competent jurisdiction, such invalidity or unenforceability shall not affect the other parts of this Agreement if the rights and obligations of the parties contained therein are not materially prejudiced and if the intentions of the parties can continue to be effectuated. To that end, this Agreement is declared severable.

## 17. Outside Businesses:

Nothing herein shall limit the right of Fearless to engage in any other business or devote its time and attention to the management or other aspects of any other business or to render services of any kind, and SuperGroup shall not claim that Fearless' engagement with or attention to another business or rendering of services is competitive with or disrupting to Fearless' performance of its duties in connection with this Agreement or the joint venture.

## 18. Remedies and Attorneys' Fees:

(a) All remedies provided by this Agreement shall be deemed to be cumulative and additional and not in lieu of or exclusive of each other or of any other remedy available to the respective parties at law or in equity.

(b) In the event any action, proceeding or lawsuit is instituted in equity or at law, the prevailing party shall, in addition to any other award or judgment, recover its reasonable out-of-pocket costs and expenses, including, without limitation, its reasonable attorney's fees, travel and lodging expenses.

## 19. Non-Waiver:

Failure by either party to insist upon the strict performance of any of the terms, conditions, or provisions of this Agreement shall not be deemed to be a waiver of such terms, conditions, and provisions, and notwithstanding such failure, either party shall have the right hereafter to insist upon the strict performance of any or all such terms and conditions of this Agreement as set forth herein.

## 20. Entire Agreement:

This Agreement constitutes the entire agreement, and supersedes all prior or contemporaneous oral or written agreements and understandings, between the parties regarding the subject matter hereof. No representations, warranties, understandings, inducements, promises, guarantees, agreements and/or conditions, whether written, oral or both, not expressly contained herein, have been made or shall be enforceable by either party concerning the subject matter hereof or any relationship between the parties hereto.

## 21. Amendments:

This Agreement may be amended, modified or supplemented only by a written instrument executed by all of the parties hereto.

## 22. Survival:

The representations, warranties, agreements and indemnities contained in this Agreement shall survive the execution and delivery of this Agreement, any

examination by or on behalf of such parties and the completion of the transactions contemplated herein.

23. **Notices**:

All notices and other communications required or permitted hereunder shall be in writing and shall be mailed by registered or certified mail, postage prepaid, sent by facsimile or electronic mail or otherwise delivered by hand, messenger or courier service addressed:

| | |
|---|---|
| If to Fearless: | Fearless Studios, Inc<br>79 Madison Avenue 15th Floor<br>New York, NY 10016<br>Email: RD@fearless.agency<br>Attention: COO |
| If to SuperGroup: | SuperGroup, Inc.<br>1556 Stokely Lane<br>Old Hickory, TN 37138<br>Email: GWBASG@gmail.com<br>Attention: Gary Bridges |
| In each case, with a copy to: | Abrams, Fensterman, Fensterman, Eisman, Formato, Ferrara, Wolf & Carone, LLP<br>3 Dakota Drive, Suite 300<br>Lake Success, NY 11042<br>Fax: 516-368-9512<br>Email: gstolller@abramslaw.com<br>Attention: Greg H. Stoller |

Each such notice or other communication shall for all purposes of this Agreement be treated as effective or having been given (i) if delivered by hand, messenger or courier service, when delivered (or if sent via a nationally-recognized overnight courier service, freight prepaid, specifying next-business-day delivery, one business day after deposit with the courier), or (ii) if sent via mail, at the earlier of its receipt or five (5) days after the same has been deposited in a regularly-maintained receptacle for the deposit of the United States mail, addressed and mailed as aforesaid, or (iii) if sent via facsimile, upon confirmation of facsimile transfer, if sent during normal business hours of the recipient, or if not sent during normal business hours of the recipient, then on the recipient's next business day, or (iv) if sent via electronic mail, upon its delivery, if sent during normal business hours of the recipient, or if not sent during normal business hours of the recipient, then on the recipient's next business day. All notices shall be sent to the address set forth within this Section 23 and to the attention of the person designated herein, or to such other address or person as may be designated by a party by giving notice to the other party pursuant to this Section 23, herein.

8

## 24. Construction; Headings.

The language of all parts of this Agreement shall in all cases be construed as a whole according to its fair meaning, and not strictly for or against any of the parties. The section and paragraph headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. As used in this Agreement, the term "or" shall be deemed to include the term "and/or" and the singular or plural number shall be deemed to include the other whenever the context so indicates or requires.

## 25. Counterparts; Faxed or E-Mailed Signatures.

This Agreement may be executed in any number of counterparts and by the parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Agreement. Any executed signature page delivered by facsimile or e-mail transmission shall be binding to the same extent as an original executed signature page, with regard to this Agreement or any amendment thereto.

**(Signature Page Follows)**

9

IN WITNESS WHEREOF, the parties hereto have executed this Joint Venture Agreement as of the Effective Date.

**FEARLESS STUDIOS, Inc**

By: _____
Robert Davidman
COO

**SUPERGROUP, INC.**

By: _____
Gary Bridges
President

_____
Gary Bridges

## DISCLOSURE SCHEDULES

**Schedule 11(a)**: The Company is currently listed as inactive on the Tennessee Secretary of State website.

**Schedule 11(f)**: A judgment has been rendered against the Company in favor of Morris Light & Sound in the amount of $400,000. The Company and Morris Light & Sound are currently discussing a settlement.

**Schedule 11(g)**: The Company has not filed any due and owing State or Federal taxes since 2016.