# Exhibit C

## STOCKHOLDERS AGREEMENT

THIS STOCKHOLDERS AGREEMENT (this "Agreement"), dated as of October 7, 2020, is made by and among the undersigned stockholders (each, a "Stockholder" and, collectively, the "Stockholders"), and FEARLESS STUDIOS INC., a Delaware corporation (herein called the "Corporation").

### RECITALS:

A. The Stockholders are the owners of all of the issued and outstanding shares of the Corporation's common stock, $0.01 par value per share (the "Common Stock"), which is the only class of authorized capital stock of the Corporation.

B. In order to promote the successful and harmonious ownership and management of the Corporation, the Stockholders and the Corporation wish to set forth certain restrictions with respect to the transfer of the Corporation's Common Stock now or hereafter issued and outstanding (the "Shares"), and certain other terms, subject to the terms and conditions set forth below.

### AGREEMENT:

NOW, THEREFORE, in consideration of the foregoing recitals and the mutual covenants herein contained, the parties hereto hereby agree as follows:

1. <u>Ownership Interest</u>. Each Stockholder hereby acknowledges that:

   (a) As of the date of this Agreement, each Stockholder owns the number of Shares set forth opposite his respective name below:

   | **Name** | **Shares** | **Percentage Interest** |
   |---|---|---|
   | Nico Albano | 500 | 50.00% |
   | Gary Bridges | 500 | 50.00% |

2. <u>Management; Board of Directors</u>.

   (a) The management of the Corporation shall be conducted in accordance with the provisions of this Agreement, which are intended to be reflected, to the extent required by applicable law, in the Certificate of Incorporation of the Corporation and/or the By-laws of the Corporation. If there is any inconsistency between this Agreement and the Certificate of Incorporation and By-laws, the provisions of this Agreement shall govern.

   (b) The Stockholders, in their capacity as stockholders of the Corporation, hereby agree that the current size of the Board of Directors shall be set at two (2), until such time as the size of the Board of Directors is modified by resolution of the Board of Directors in accordance with the By-Laws of the

Corporation and/or the General Corporation Law of the State of Delaware. In furtherance of the foregoing, the Stockholders shall cause the Corporation to, as soon as practicable following the effectiveness of this Agreement, fix the number of directors of the Corporation at two (2) (whether via the amendment of the Certificate of Incorporation or By-Laws or otherwise).

(c) Each Stockholder agrees that at all regular and special meetings of the stockholders of the Corporation, and in all written consents of the stockholders in lieu thereof, each Stockholder shall vote all Shares owned by such Stockholder in such a manner as to elect Nico Albano and Gary Bridges, as the directors of the Corporation (each, a "Director" and collectively, the "Directors"). Each director shall serve until he resigns, dies or becomes Permanently Incapacitated (which shall mean a disability of a Director that causes the inability of such Director to provide any significant services to the Corporation for 180 consecutive days), or otherwise becomes unable to serve as a Director. If a Director is unable to serve as a director pursuant to this paragraph (c), then the remaining Director may nominate a new director to the Board of Directors to fill such vacancy, and each Stockholder will, in all capacities, vote in favor of the election of such nominee.

(d) The foregoing obligations of a Stockholder to elect the aforesaid individuals as the Directors shall continue for so long as such person continues to be a Stockholder.

(e) Each Stockholder agrees to ~~use his best efforts to~~ cause the Board of Directors of the Corporation to elect and re-elect the following persons as officers of the Corporation, to serve until their respective successors are duly elected and qualified or until any such officer's earlier resignation, removal or withdrawal:

| Name | Title |
| --- | --- |
| Gary Bridges | Co-CEO ~~President~~ OF PRODUCTION - SECRETARY |
| Nico Albano | CO- CEO, ~~Secretary and Treasurer~~ PRESIDENT OF OPERATIONS - TREASURER |

(f) The duties and responsibilities of the officers shall be as set forth in the By-Laws of the Corporation, or to the extent not so provided, as shall be determined by the Board of Directors.

(g) The Stockholders shall take any and all actions and execute any and all documents necessary, in any and all of their capacities, to effectuate the foregoing.

3. Restrictions on Transfer of Shares.

2

(a) General Prohibition on Transfers. Except as set forth in this Agreement, a Stockholder shall not sell, assign, encumber, pledge, transfer, donate or otherwise dispose (each, a "Transfer") of any of their rights, title or interest in or to the Shares now or hereafter owned by such Stockholder without the prior written consent of the Board of Directors. In connection with and as a condition to each Transfer made pursuant to this Section 3, other than a Transfer to the Corporation, the purported transferee and an authorized officer of the Corporation shall have executed Exhibit A attached hereto, in which event such purported transferee shall be deemed to be a Stockholder within the meaning of this Agreement and bound by the terms and conditions hereof.

(b) Excepted Transfers. Notwithstanding anything to the contrary set forth in this Section 3, subject to applicable law, a Stockholder shall be permitted, without restriction, to Transfer such Stockholder's Shares to: (i) subject to the Board of Director's consent, the Corporation, or (ii) a trust for the benefit of such Stockholder's spouse or domestic partner, child, spouse's child, daughter-in-law, son-in-law, brother, sister, mother, and/or father. In the case of a Transfer described in Section 3(b)(ii), such trust shall be subject to all of the conditions and restrictions of this Agreement as they pertain to the Stockholders and shall execute an acknowledgement to such effect as a condition to such Transfer.

4. Required and Prohibited Acts. Each Stockholder shall do or cause all the following to be done until such person is no longer a Stockholder of the Corporation:

(a) Cause the Corporation to operate as an "S" corporation under Section 1361 et seq. of the Internal Revenue Code of 1986, as amended (the "Code"), unless all the Stockholders mutually agree otherwise in writing.

(b) Not consent to the revocation of the Corporation's "S corporation" status under the Code, without the prior written consent of all the Stockholders.

(c) Not transfer or agree to transfer any Shares owned by him/her by contract, will or otherwise to any person or entity which shall cause the revocation of the Corporation's "S corporation" status under the Code, without the prior written consent of all the Stockholders.

(d) Not take or permit any other action which would result in the termination or revocation of the Corporation's "S corporation" status, including but not limited to causing the Corporation to issue or accepting from the Corporation any notes, stock options, or other instruments that would constitute a second class of stock under Section 1361(b)(1)(D) of the Code or the regulations thereunder.

3

(e) If the Internal Revenue Service ("IRS") finds that the Corporation's "S corporation" status has been inadvertently terminated, consent to all adjustments required by the IRS as a condition to waiving the tax effect of the terminating event or events pursuant to Section 1362(f) of the Code.

(f) If (i) any Shares are transferred, (ii) such transfer results in the complete termination of a Stockholder's interest in the Corporation at a time during which the Corporation is an "S corporation," (iii) the effective date of such transfer occurs during the Corporation's taxable year, and (iv) any Stockholder so requests, then all the Stockholders shall take appropriate action to make an effective election under Section 1377(a)(2) of the Code to close the Corporation's books on the effective date of the transfer.

(g) If (i) the Corporation "S corporation" status terminates during the course of its taxable year for any reason, and (ii) any Stockholder so requests, then all the Stockholders shall take appropriate action to make an election under Section 1362(e)(3) of the Code to close the Corporation's books on the date immediately preceding the date on which the termination of the "S corporation" status occurs.

5. Distributions. The Stockholders agree to cause the Corporation to make cash dividend distributions each year to each Stockholder in an amount determined by multiplying by a percentage (the "effective percentage") the amount of such Stockholder's taxable income resulting from the "S corporation" pass through allocations of the Corporation's income and gain to each Stockholder. The effective percentage shall equal the sum of the Federal Rate (as defined below) plus the Adjusted State Rate. The "Federal Rate" shall be the highest rate applicable to taxable income of individuals for such year under the Code. The "Adjusted State Rate" shall be the highest rate applicable to taxable income of individuals under the income tax laws of the state which has the highest such rate among the states in which the Stockholders reside multiplied by the difference of one (1) minus the Federal Rate; provided, however, that if there are no deductions allowable under the Code for such year for state income taxes, the Adjusted State Rate shall be the highest rate applicable to taxable income of individuals under the income tax laws of the state which has the highest such rate among the states in which the Stockholders reside.

6. Legend.

(a) The face or reverse side of the certificates evidencing Shares owned by each Stockholder shall include legends in the following form, together with any other legends the Corporation may reasonably require:

"The shares represented by this certificate are subject to the terms and conditions of a Stockholders' Agreement dated as of October 7, 2020, among Fearless Studios Inc (the "Corporation"), Nico Albano and Gary Bridges, a copy of which is on file with the Corporation, and such shares may not be transferred

4

(as such term is defined in such Agreement), except in accordance with the terms and conditions thereof."

"The shares represented by this certificate have not been registered under the Securities Act of 1933, as amended. The shares have been acquired for investment purposes and not with a view to distribution or resale, and may not be sold, assigned, pledged, hypothecated, or otherwise transferred without an effective registration statement for such shares under the Securities Act of 1933, as amended, and applicable state securities laws or an opinion of counsel satisfactory to the issuer of these shares to the effect that registration is not required under such Act and such state securities laws."

(b) The Corporation shall make a notation in the appropriate books and records of the Corporation prohibiting the transfer of the Shares heretofore and hereafter issued to the Stockholders, or to any other person acquiring Shares pursuant to this Agreement, in the absence of compliance with all of the terms and conditions hereof.

7. <u>Termination of Agreement</u>. Unless sooner terminated by the written mutual agreement of the parties, this Agreement and the rights and obligations hereunder shall terminate as to each Stockholder (i) at such time as such Stockholder no longer owns any Shares in the Corporation, (ii) following the commencement of a public trading market for any shares of capital stock of the Corporation or (iii) following the sale of the Corporation.

8. <u>Effect of Agreement</u>. This Agreement shall be binding on and inure to the respective benefit of the parties hereto, their successors, and permitted assigns.

9. <u>Amendments</u>. This Agreement may be amended to bind any transferee or subscriber of Shares as a Stockholder hereunder by the transferee or subscriber and an authorized officer of the Corporation executing <u>Exhibit A</u> attached hereto. No other change, modification, or amendment of this Agreement shall be valid or binding unless in a writing signed by all the parties hereto.

10. <u>Equitable Relief</u>. The parties hereto agree that the obligations and performances of each party hereto set forth in this Agreement are of a special and unique character which, if breached, shall cause loss that is largely intangible but nonetheless real and irreparable. Accordingly, each party hereto agrees that the respective obligations and performances provided for herein may be enforced by an injunction or other equitable relief, in addition to any other rights or remedies that may be available under this Agreement or at law.

11. <u>Attorneys' Fees</u>. If any party brings any action to enforce any provisions of this Agreement, whether at law, in equity or otherwise, the party who prevails in such action shall be entitled, in addition to any other rights or remedies available to him or it, to collect from the other party or parties the reasonable costs and expenses incurred in the investigation preceding such action and the prosecution of such action, including, but not limited to, reasonable attorneys' fees.

5

12. <u>Governing Law</u>. In all respects, including all matters of construction, validity and performance, this Agreement shall be governed by, and construed and enforced in accordance with, the internal laws of the state of New York applicable to contracts made and performed in that state (without regard to the choice of law or conflicts of law provisions thereof) and any applicable laws of the United States of America.

13. <u>Notices</u>. All notices and other communications required or permitted hereunder shall be in writing. Notices and such other communications may be delivered either (a) personally, against written receipt therefore or (b) by means of (i) a recognized overnight courier service (such as Federal Express, DHL, Airborne Express or U.S.P.S. Express Mail), (ii) postage paid, certified or registered mail, return receipt requested, or (iii) electronically confirmed facsimile or e-mail transmission. Notices shall be addressed as follows:

| | |
|---|---|
| If to the Corporation, to: | Fearless Studios Inc.<br>79 Madison Avenue, Floor 15<br>New York, New York 10016<br>Attn: Nico Albano |
| If to Nico Albano individually, to: | Nico Albano<br>79 Madison Avenue, Floor 15<br>New York, New York 10016<br>Email: nico@pacific.ag |
| If to Gary Bridges individually, to: | Gary Bridges<br>1556 Stokley Lane<br>Old Hickory, TN 37138<br>Email: gwbasg@gmail.com |
| With copies of all such notices delivered to: | Greg H. Stoller, Esq.<br>Abrams Fensterman, et al.<br>3 Dakota Drive, Suite 300<br>Lake Success, New York 11042<br>Tele: 516-368-9413<br>Email: gstoller@abramslaw.com |

or, in the case of any of the parties hereto, at such other address as such party shall have furnished to each of the other parties hereto in accordance with this Section 13. Each such notice, demand, request or other communication shall be deemed given (x) on the date of personal delivery, (y) on the first business day following the date of delivery to the overnight courier service or facsimile or e-mail transmission, or (z) three business days following such certified or registered mailing.

14. <u>Future Shares</u>. The terms and conditions of this Agreement shall apply to all Shares owned by any Stockholder at any time, regardless of how, when (heretofore or hereafter)

6

or from whom acquired. The term "Stockholder" or "Stockholders" shall include any heir or Representative of any Stockholder and any person acquiring Shares directly or indirectly from a Stockholder during the term of this Agreement who becomes a party to this Agreement or is otherwise bound by its terms.

15. <u>Conflicts of Interest</u>. Subject to the other express provisions of this Agreement or any other agreement to which a Stockholder is a party, each Stockholder of the Corporation at any time and from time to time may engage in and possess interests in other business ventures of any and every type and description, independently or with others, ~~including ones in competition with the Corporation, with no obligation to offer to the Corporation or any other Stockholder the right to participate therein.~~ The Corporation may transact business with any Stockholder or a party related thereto.

16. <u>Entire Agreement</u>. This Agreement, along with the attached exhibits, sets forth all of the promises, agreements, conditions, and understandings between the parties respecting the subject matter hereof and supersedes all negotiations, conversations, discussions, correspondence, memoranda and agreements between the parties concerning such subject matter.

17. <u>Successors and Assigns; Assignment; No Third-Party Beneficiary</u>. Except as otherwise provided in this Agreement, the terms and conditions of this Agreement shall inure to the benefit of and be binding upon the respective successors and assigns of the parties. Nothing in this Agreement, express or implied, is intended to confer upon any party other than the parties to this Agreement, or the parties' respective permitted successors and assigns, any rights, remedies, obligations, or liabilities under or by reason of this Agreement, except as expressly provided in this Agreement. Unless clearly inapplicable, all references in this Agreement to a party shall be deemed to include any such permitted successor or assign.

18. <u>Proper Construction; Headings; Severability</u>. The language of all parts of this Agreement shall in all cases be construed as a whole according to its fair meaning, and not strictly for or against any of the parties. This Agreement has been subject to negotiations among all parties hereto and each party has been advised to seek such party's separate counsel, and, as such, this Agreement shall be deemed prepared by all parties. Any ambiguities shall not be deemed to be construed against any party hereto. The section and paragraph headings contained in this Agreement are for reference purposes only and shall not affect in any way the meaning or interpretation of this Agreement. Whenever possible, each provision of this Agreement will be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Agreement is held to be invalid, illegal or unenforceable in any respect under any applicable law or rule in any jurisdiction, such invalidity, illegality or unenforceability will not affect any other provision or any other jurisdiction, but this Agreement will be reformed, construed and enforced in such jurisdiction to the greatest extent possible to carry out the intentions of the parties hereto. As used in this Agreement, the term "or" shall be deemed to include the term "and/or" and the singular or plural number shall be deemed to include the other whenever the context so indicates or requires.

19. <u>Waiver of Breach</u>. The waiver by any party of a breach of any provision of this Agreement by any party hereto must be in writing and shall not operate or be construed as a

7

waiver of any subsequent breach by any other party. No delay or omission to exercise any right, power or remedy accruing to any party under this Agreement, upon any breach or default of any other party under this Agreement, shall impair any such right, power or remedy of such non-breaching or non-defaulting party nor shall it be construed to be a waiver of any such breach or default, or an acquiescence therein, or of or in any similar breach or default thereafter occurring; nor shall any waiver of any single breach or default be deemed a waiver of any other breach or default theretofore or thereafter occurring.

20. <u>Counterparts; Faxed or E-Mailed Signatures</u>. This Agreement may be executed in any number of counterparts and by the parties hereto in separate counterparts, each of which when so executed shall be deemed to be an original and all of which taken together shall constitute one and the same Agreement. Any executed signature page delivered by facsimile or e-mail transmission shall be binding to the same extent as an original executed signature page, with regard to any agreement subject to the terms hereof or any amendment thereto.

(Signature page to follow)

IN WITNESS WHEREOF, the parties hereto have signed this Stockholders Agreement the day and year first above written.

FEARLESS STUDIOS INC.

By: _____
Gary Bridges
President

_____
Nico Albano

_____
Gary Bridges

9

## Exhibit A

## ADDENDUM TO STOCKHOLDERS AGREEMENT

The undersigned hereby acknowledges that he/she/it has read the Stockholders Agreement, dated as of October 7, 2020 (the "Agreement"), by and among Fearless Studios Inc., a Delaware corporation, and the stockholders thereto. By signing this Addendum, the undersigned hereby agrees to adhere to and be bound by the terms and conditions set forth in the Agreement as if an original signatory.

The parties have executed this Addendum on _____, 20__.

FEARLESS STUDIOS INC.

By: _____
     Name:
     Title:

STOCKHOLDER:

_____
Name: