IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| NASHVILLE SUPERGROUP, LLC, | ) |
| Plaintiff, | ) |
| v. | ) No. 3:22-cv-00824 |
| | ) JUDGE RICHARDSON |
| GARY W. BRIDGES, ET AL., | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is "Plaintiff Nashville Supergroup, LLC's Motion to Dismiss Defendant Gary W. Bridges's Amended Counterclaim" (Doc. No. 40, "Motion"). Via the Motion, Plaintiff seeks dismissal pursuant to Fed. R. Civ. P. 12(b)(6) of Defendant's amended counterclaim (Doc. No. 33, "Amended Counterclaim").[1] Plaintiff filed an accompanying memorandum in support of the Motion (Doc. No. 41, "Memorandum"). Defendant thereafter filed a response in opposition to the Motion (Doc. No. 47), to which Plaintiff filed a reply (Doc. No. 52). For the reasons stated herein, the Motion is GRANTED.

ALLEGED FACTS[2]

---

[1] Herein, "Defendant" refers only to Defendant Bridges. Although Fearless Studios, Inc. is also a Defendant in this action, it has not responded to or defended this action in any way, and the Clerk has entered default against it. (Doc. No. 70). Thus, this Memorandum Opinion and Order relates only to Defendant Bridges.

[2] The facts herein are taken from the Amended Counterclaim, which is the (sole) pleading implicated by the Motion. For purposes of the Motion, the facts in the Amended Counterclaim are accepted as true, except to the extent that they are qualified herein (as, for example, by "Defendant alleges") to denote that they are not being taken as true (at least, not without further discussion as to how and why they are being taken as true) but instead are set forth merely to make clear what a party claims to be true. Throughout this opinion, the Court forgoes any such qualifiers for any fact that it is accepting as true, stating those facts without qualification even though it is aware that any such (alleged) fact ultimately might not prove to be true. The Court emphasizes that whenever it states (alleged) facts without qualifiers, consistent with the above-stated protocols, it has not found the alleged facts to be the actual facts.

In 2010, Defendant formed SuperGroup, Inc. ("SGI"), a corporation organized under Tennessee law. (Doc. No. 33 at ¶ 6). SGI registered the trademark American Supergroup, Registration No. 4705484 ("American Supergroup Mark")[3] and acquired the domain name americansupergroup.com. (*Id.* at ¶ 7). Defendant and Nico Albano ("Albano")[4] formed Fearless Studios, Inc. ("Fearless") in October 2020. (*Id.* at ¶ 8). Defendant and Albano each owned 50 percent of Fearless. (*Id.*). When forming Fearless, Defendant insisted to Albano that any action taken on behalf of Fearless would require unanimous agreement among both Defendant and Albano, and Albano agreed. (*Id.* at ¶ 9). Handwritten annotations to the "Stockholders Agreement"[5] designated Defendant and Albano each as a "Co-CEO" of Fearless. (*Id.* at ¶ 10).

The Amended Counterclaim alleges that Defendant "signed the JVA."[6] (*Id.* at ¶ 13). Defendant alleges that the "JVA purported to establish a joint venture with Fearless to make a television show known as 'American Supergroup' (['|Show')." (*Id.*). Notably, although the

---

[3] Although the Amended Counterclaim does not so state, it appears that this registration was a federal registration with the United States Patent and Trademark Office. *See* https://tsdr.uspto.gov/#caseNumber=86124379&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (last accessed Sep. 22, 2025).

[4] The Amended Counterclaim does not otherwise explain who Albano is.

[5] The Amended Counterclaim cites the Stockholders Agreement without providing any context for it and without identifying what it is. Although the Amended Counterclaim does not so state, it is inferable that the "Stockholders Agreement" was an agreement between Defendant and Albano concerning their respective rights as the holders of (all) shares of Fearless. In alleging that Defendant and Albano formed Fearless, Defendant cites Docket No. 1-3, (Doc. No. 33 at ¶¶ 8, 10), which is an attachment to Plaintiff's complaint that is titled "Stockholders Agreement" and appears to be signed by Defendant. So the Court assumes that Docket No. 1-3 is the Stockholders Agreement.

[6] The Amended Counterclaim refers to the JVA without providing any context for it. (Doc. No. 33 at ¶ 13). But the Amended Counterclaim here cites Docket No. 1-2, which is titled "Joint Venture Agreement" and was attached as an exhibit to Plaintiff's complaint, so it is apparent that this document is the JVA to which Defendant refers.

Amended Counterclaim does not make this clear, the JVA was an agreement between Bridges, Fearless, and SGI.

Despite alleging in paragraph 13 that "[Defendant] signed the JVA," and despite referring to a document (the JVA) that indicates that Defendant signed the JVA (twice), the Amended Counterclaim alleges in the very next paragraph that "[n]either Bridges nor Albano signed the JVA. Instead, the signature page of the document contains an executed signature block for 'Robert Davidman COO.'"[7] (*Id.* at ¶ 14). As explained in a footnote below, the Court construes this to constitute an allegation (which the Court accepts as true because under the circumstances it seems primarily a factual allegation rather than a legal conclusion) that neither Bridges nor Albano signed the JVA *on behalf of Fearless*. As for the allegation in paragraph 13 that "[Defendant] signed the JVA," the Court accepts as true that Defendant signed the JVA twice, once on behalf of himself and once on behalf of SGI.

Defendant alleges that "Davidman was not an authorized signatory of Fearless," (*id.* at ¶ 15), because "Davidman worked at a *separate* entity—unaffiliated with Bridges—called 'Fearless Agency[, which] is not the same entity as Fearless Studios, Inc" (*id.* at ¶ 17). The "JVA purported to grant Fearless exclusive and sole management with respect to decisions regarding the use of the [American Supergroup Mark] and the domain name americansupergroup.com in connection with the Show." (*Id.* at ¶ 19). But the Amended Counterclaim concludes that the JVA "was not an

---

[7] Although the Amended Counterclaim appears to contradict itself in this regard, the Court infers that what Defendant means to convey is that neither himself nor Albano signed the JVA *on behalf of Fearless*. When discussing "the JVA," Defendant cites the JVA attached to Plaintiff's complaint (Doc. No. 1-2). The parties appear to agree that this is the "JVA" at issue. The signature block on the document includes Defendant's signature on behalf of SGI and Robert Davidman's signature on behalf of Fearless (Doc. No. 1-2 at 11). It would be absurd for Defendant to allege that he signed the JVA and in the next paragraph allege that he did not sign the JVA. Therefore, the Court infers that what Defendant actually means is that he signed the JVA under SGI's name and that Davidman signed the JVA under Fearless' name.

enforceable agreement due to the absence of the signature of an authorized Fearless signatory." (*Id.* at ¶ 20).

The Amended Counterclaim then alleges that in or around September 11, 2022, Norelli[8] signed a document titled "Joint Venture Formation Agreement" ("JVFA") on behalf of Plaintiff. (*Id.* at ¶ 21). Notably, although the Amended Counterclaim does not make this clear, the JVFA is an agreement between Nashville Supergroup and Fearless.[9] The Amended Counterclaim alleges that "Albano purported to sign [the JVFA] on behalf of Fearless, but he did so without the consent of Bridges." (*Id.* at ¶ 23). The JVFA asserted that Fearless then owned or had the right to use the American Supergroup Mark and Project Supergroup, Registration No. 97056035 ("Project Supergroup Mark"),[10] (Doc. No. 1-1 at 2, 25, 34), and it purported to grant Plaintiff a license to the intellectual property listed on Schedule 1. (*Id.* at ¶ 22). Schedule 1 listed two trademarks: (1) the American Supergroup Mark and (2) the Project Supergroup Mark. (*Id.*).

Defendant alleges that (apparently in connection with the JVFA) "Norelli and Albano" "conspired behind Bridges' back in order to create a paper trial [sic] to cover up their conduct and do an end-run around Bridges." (*Id.* at ¶ 30). Defendant alleges that because he "did not sign and

---

[8] Plaintiff's sole member is Florida Supergroup, LLC, and Florida Supergroup LLC's sole member is "Norelli," an individual who resides in Florida. (Doc. No. 33 at ¶ 2). The Amended Counterclaim does not provide a first name for "Norelli," or indeed information at all about "Norelli" other than that "Norelli" is an individual who resides in Florida. Plaintiff's Complaint, however, identifies him as Joseph Norelli, a "Florida-based investor [who, through] Nashville Supergroup, is the Show's primary investor and funder." (Doc. No. 1 at ¶ 3).

[9] Defendant here cites Docket No. 1-1, which is titled "Joint Venture Formation Agreement" and attached to Plaintiff's complaint as an exhibit, so it is apparent that this document is the JVFA to which Defendant refers.

[10] Although the Amended Counterclaim does not so state, it appears that this registration was a federal registration with the United States Patent and Trademark Office. *See* https://tsdr.uspto.gov/#caseNumber=97056035&caseSearchType=US_APPLICATION&caseType=DEFAULT&searchType=statusSearch (last accessed Sep. 22, 2025).

consent to the terms of the JVFA, the JVFA is unenforceable and did not transfer to Plaintiff any intellectual property,"[11] including the American Supergroup Mark and the Project Supergroup Mark. (*Id.* at ¶ 31). Relatedly, Defendant alleges that the purported transfer to Nashville Supergroup of these two trademarks pursuant to the JVFA "was ineffective because Fearless did not own or otherwise have the authority to transfer these trademarks." (*Id.* at ¶ 31).

PROCEDURAL HISTORY

On November 14, 2022, Plaintiff filed the instant suit against Defendant (and his co-Defendant). (Doc. No. 1, "Complaint").[12] Plaintiff asserts two tort claims against Defendant Bridges: (1) intentional interference with business relationships and (2) defamation. (*Id.* at ¶¶ 102–17). In its intentional interference claim, Plaintiff alleges that Defendant "made disruptive and defamatory statements" to third parties with whom Plaintiff has or had business relationships and that Defendant "utilized improper means by making defamatory statements and misrepresentations regarding Nashville Supergroup's right to use the intellectual property for the Show." (*Id.* at ¶¶ 106–08). In its defamation claim, Plaintiff alleges that Defendant "published several false and defamatory statements to third persons, including" claims that "Nashville Supergroup had 'stolen' the Show." (*Id.* at ¶ 113).

Defendant filed an answer to Plaintiff's Complaint as well as a counterclaim for declaratory judgment against Plaintiff (Doc. No. 21, "Answer"). In his Answer, Defendant asserts several affirmative defenses, and his "Second Defense" is premised on the argument that both the JVA and JVFA are unenforceable agreements (*id.* at 15-16). Defendant alleges that (1) "Nashville

---

[11] Notably, the Court accepts as true that Defendant did not sign or consent to the terms of the JVFA because this is a factual allegation. But it does not accept as the legal conclusion that "the JVFA is unenforceable and did not transfer any intellectual property" to Plaintiff.

[12] The Court granted Plaintiff's motion for entry of default against Defendant Fearless on December 22, 2022 (Doc. No. 19).

Supergroup's claims are barred by the doctrine of truth because the JVFA (Doc. 1-1) is an unenforceable agreement to agree that failed to transfer any intellectual property rights to [Nashville Supergroup]," (*id.* at 15); (2) "Bridges did not sign the JVFA, so the JVFA is unenforceable and did not transfer any intellectual property to Nashville Supergroup," (*id.* at 16); and (3) "Davidman was not an authorized signatory of Fearless [and thus] the JVA is an [sic] not an enforceable agreement, so Fearless could not have transferred the intellectual property at issue to Nashville Supergroup pursuant to the JFVA [sic]," (*id.* at 16).

Plaintiff moved to dismiss Defendant's counterclaim. (Doc. No. 29). Defendant then filed an Amended Counterclaim seeking declaratory relief (Doc. No. 33). In his Amended Counterclaim, Defendant alleges that he "did not make the purported defamatory and tortious statements alleged in the Complaint," but that, "even if he did . . . such statements would have been true" because "Nashville Supergroup does not have any rights to the intellectual property at issue under the JVFA." (*Id.* at ¶¶ 50-51). Defendant requests a declaratory judgment that:

> (1) no authorized signatory signed the JVA on behalf of Fearless, so the JVA is unenforceable and did not grant Fearless the right to own or control any intellectual property that could be granted to Nashville Supergroup under JVFA;
>
> (2) Bridges did not assign or otherwise transfer rights to Fearless in the trademark Project Supergroup, Registration No. 97056035, so Fearless did not grant Nashville Supergroup the right to use such trademark under the JVFA;
>
> (3) Bridges did not consent to or sign the JVFA, so the JVFA is unenforceable and did not grant Nashville Supergroup the right to use any intellectual property owned or controlled by Fearless; and
>
> (4) the JVFA is an unenforceable agreement to agree, so the JVFA did not grant Nashville Supergroup the right to use any intellectual property owned or controlled by Fearless.

(*Id.* at ¶ 68). Defendant argues that "[e]ach of the declarations sought serves a useful purpose" because they "will clarify—both for the parties and for nonparties to this lawsuit—who owns and has the right to use the intellectual property at issue." (*Id.* at ¶ 67).

## LEGAL STANDARD

"The legal standard for motions to dismiss counterclaims follows the same standard as other motions to dismiss under Rule 12(b)(6)." *Selby v. Schroeder*, 567 F. Supp. 3d 841, 845 (M.D. Tenn. 2021). For purposes of a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must take all of the factual allegations in a complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id.* A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.*; *Abriq v. Hall*, 295 F. Supp. 3d 874, 877 (M.D. Tenn. 2018) (citing *Fritz v. Charter Tp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010)). Moreover, factual allegations that are merely *consistent* with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish *plausibility* of entitlement to relief, even if it supports the *possibility* of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), it may be

appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. This can be crucial, as no such allegations count toward the plaintiff's goal of reaching plausibility of relief. To reiterate, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id.* at 681. The question is whether the remaining allegations—factual allegations, *i.e.*, allegations of factual matter—plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8, and thus must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6) unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). When a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Doe v. Ohio State Univ.*, 219 F. Supp. 3d 645, 652-53 (S.D. Ohio 2016); *Blanch v. Trans Union, LLC*, 333 F. Supp. 3d 789, 791-92 (M.D. Tenn. 2018). When the "the attached documents [a]re incorporated by reference and quoted extensively, they are central to the [party]'s claims." *In re Fair Fin. Co.*, 834 F.3d 651, 656 n.1 (6th Cir. 2016).[13]

## DISCUSSION

---

[13] Both Plaintiff and Defendant refer to the JVA and JVFA throughout the pleadings. These documents are attached to Plaintiff's Complaint as Docket No. 1-1 (JVFA) and Docket No. 1-2 (JVA). Further, the JVA and JVFA are "integral to the claims" here as Plaintiff's claims are premised on the JVA and JVFA being enforceable (thereby transferring intellectual property to Plaintiff), and Defendant's defenses are premised on the argument that the JVA and JVFA are unenforceable. Additionally, it appears that "neither party contests the appropriateness of their consideration on review of [Plaintiff]'s motion to dismiss," *In re Fair Finance*, 834 F.3d at 656 n.1, as both parties cite the documents. Thus, the Court considers the JVA and JVFA when resolving this Motion.

The Declaratory Judgment Act states that, in a case or actual controversy within its jurisdiction, the court may declare the rights and other legal relations of any interested party seeking such declaration. 28 U.S.C. § 2201. The Act confers on federal courts "unique and substantial discretion" in deciding whether to declare the rights of litigants. *Vanderbilt Univ. v. Scholastic, Inc.*, 382 F. Supp. 3d, 734, 758 (M.D. Tenn. 2019) (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995)); *Mass. Bay Ins. Co. v. Christian Funeral Dirs., Inc.*, 759 F. App'x 431, 435 (6th Cir. 2018).

The Declaratory Judgment Act "created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." *Wilton*, 515 U.S. at 288. Accordingly, under the Declaratory Judgment Act, the court has discretion *not* to hear a declaratory judgment action, even where jurisdiction exists. *Encore Furniture Thrifts & More, LLC v. Doubletap, Inc.*, 281 F. Supp. 3d 665, 668 (M.D. Tenn. 2017). This discretion allows the court to weigh "considerations of practicality and wise judicial administration" before proceeding with a declaratory judgment action. *Wilton*, 515 U.S. at 288.

"Consistent with the nonobligatory nature of the remedy," a district court may dismiss a claim for declaratory judgment at its discretion, if the court determines "that a declaratory judgment will serve no useful purpose." *Id.*; *Marlow Indus., Inc. v. Sealy, Inc.*, No. 5:17-056, 2017 WL 3319377, at *2 (E.D. Ky. Aug. 3, 2017) ("Courts have discretion to grant or deny a request for declaratory judgment.").

Given all of these principles, it should come as no surprise that "[a] duplicative counterclaim fails to state a claim and should be dismissed under Rule 12(b)(6)." *Am. Clothing Express, Inc. v. Cloudflare, Inc.*, No. 2:20-cv-02007, 2021 WL 722730, at *5 (W.D. Tenn. Feb. 24, 2021). Courts regularly dismiss redundant declaratory judgment counterclaims "when it is clear

that there is complete identity of factual and legal issues between the complaint and the counterclaim," and adjudication of the complaint would render the counterclaim moot. *Emma, Inc. v. Microstrategy, Inc.*, No. 3-11-0926, 2012 WL 90405, at *1 (M.D. Tenn. Jan. 11, 2012); *see, e.g.*, *Malibu Media, LLC v. [Redacted]*, 705 F. App'x 402, 406-07 (6th Cir. 2017) (affirming district court's dismissal of declaratory judgment counterclaim for non-infringement of plaintiff's copyright where the resolution of plaintiff's infringement claim would render the counterclaim moot); *Mawdsley v. Kirkland's, Inc.*, No. 3-13-0462, 2013 WL 5754947, at *2 (M.D. Tenn. Oct. 23, 2013) (dismissing defendant's counterclaim seeking a declaratory judgment for non-infringement because it was the mirror image of the plaintiff's claim for copyright infringement); *Emma*, 2012 WL 90405, at *1 (dismissing defendant's counterclaim for declaratory judgment that defendant is not infringing plaintiff's mark because the adjudication of plaintiff's claims would render it moot).

To put it only slightly differently, courts have held that a declaratory judgment counterclaim should be dismissed if it mirrors the complaint's claims. *Malibu Media*, 705 F. App'x at 405-06 (collecting cases). "[W]hen a counterclaim merely restates the issues as a 'mirror image' to the complaint, the counterclaim serves no purpose." *Fed. Deposit Ins. Corp. v. Project Dev. Corp.*, No. 86-5490, 1987 WL 37488 (6th Cir. May 27, 1987); *Hardiman v. McKeen*, No. 19-12949, 2020 WL 1821025, at *4 (E.D. Mich. Apr. 10, 2020); *Orleans Int'l, Inc. v. Mistica Foods, LLC*, No. 15-13525, 2016 WL 3878256, at *3 (E.D. Mich. July 18, 2016) (citing *Aldens, Inc. v. Packel*, 524 F.2d 38, 51-52 (3d Cir. 1975)). "When the request for declaratory relief brings into question issues that already have been presented in plaintiff's complaint and defendant's answer to the original claim, . . . a party might challenge the counterclaim on the ground that it is redundant and the court should exercise its discretion to dismiss it. This would be true if defendant is adequately protected in terms

of the ability to have the issues that are raised by the request for declaratory relief fully adjudicated." *Boden v. St. Elizabeth Med. Ctr., Inc.*, No. 16-49, 2018 WL 1629866, at *10 (E.D. Ky. Apr. 4, 2018) (internal citation and quotation marks omitted).

Plaintiff moves to dismiss the Amended Counterclaim because it is redundant of the issues raised in Plaintiff's Complaint and Defendant's Answer. Defendant did not specifically address the "redundancy argument" in his briefing (Doc. No. 47); instead, Defendant opted to address only whether the factors enumerated in *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323 (6th Cir. 1984),[14] weigh in favor of exercising jurisdiction over the Amended Counterclaim, and whether the declaratory judgments state a claim for relief on the merits. (Doc. No. 47 at 6, 9). Defendant claims to have addressed any arguments regarding redundancy in his discussion of the *Grand Trunk* factors (Doc. No. 47 at 7 n.4). As an initial matter, Defendant's approach to the redundancy argument is incorrect. Defendant states that it is "undiscernible" why Plaintiff addresses the redundancy argument in a separate argument heading (Doc. No. 47 at 7 n.4). But it *is* discernible why Plaintiff addresses the redundancy argument separately, because the Sixth Circuit has endorsed that approach. *See Malibu Media*, 705 F. App'x at 405-06 ("Courts have evaluated whether such a 'useful purpose' exists by looking *specifically* at the issue of redundancy and may appropriately do so without relying on the *Grand Trunk* factors.") (emphasis added). Thus, this Court can look "specifically at the issue of redundancy" as a threshold matter without conducting an analysis under *Grand Trunk*. *Id.* Further, Defendant never addresses the redundancy

---

[14] In the Sixth Circuit, courts consider five factors in deciding whether a case is appropriate for declaratory judgment: (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective. *Grand Trunk*, 746 F.2d at 326.

argument in his briefing (as he claims to do), instead, he simply states that "the declaratory judgments [that he requests] . . . are *not* 'redundant.'" (Doc. No. 47 at 7). In sum, Defendant has not offered any explanation for why the declaratory judgments he seeks would not be redundant of the issues already pending in this action by virtue of the Complaint.

And indeed, the declaratory judgments Defendant seeks are redundant of the issues raised in the Complaint and Defendant's Answer. There is a complete (or at least virtually complete) identity of factual and legal issues between Defendant's requested declaratory relief and Plaintiff's claims. Essentially, Defendant has taken his Answer to Plaintiff's Complaint and asked the Court for a declaratory judgment regarding his affirmative defenses. The declarations sought by Defendant—regarding the enforceability of the JVA and the JVFA—are directly implicated by Plaintiff's allegations. Thus, the counterclaim serves no purpose.

Tellingly, Defendant's statement of facts merely reiterates the dispute over the validity of the JVA and JVFA, without presenting basis for declaratory relief on matters not implicated by Plaintiff's Complaint. Defendant has simply rephrased parts of his Answer to Plaintiff's Complaint, or taken Plaintiff's allegations and denied those allegations, to form his Amended Counterclaim, which demonstrates the redundant nature of Defendant's counterclaim.

First, Defendant seeks a declaration that "no authorized signatory signed the JVA on behalf of Fearless, so the JVA is unenforceable and did not grant Fearless the right to own or control any intellectual property that could be granted to Nashville Supergroup under the JVFA." (Doc. No. 33 at ¶ 68). This is a mirror image of Defendant's affirmative defense to Plaintiff's Complaint, where Defendant alleges that "Davidman was not an authorized signatory of Fearless. Accordingly, the JVA is an [sic] not an enforceable agreement, so Fearless could not have transferred the intellectual property at issue to Nashville Supergroup pursuant to the JFVA." (Doc. No. 21 at 16).

Relatedly, this declaration is merely the opposite of what Plaintiff alleges in its Complaint, *i.e.*, that the JVA was signed by an authorized signatory on behalf of Fearless and that the JVA is enforceable. (Doc. No. 1 at ¶¶ 16, 19, 30, 108, 114).

Second, Defendant seeks a declaration that he "did not assign or otherwise transfer rights to Fearless in [the Project Supergroup Mark], so Fearless did not grant Nashville Supergroup the right to use such trademark under the JVFA." (Doc. No. 33 at ¶ 68). Similar to the first requested declaration, this declaration would require the Court to determine whether the JVA is an enforceable agreement and if so, what rights were transferred as a result of the JVA. But Plaintiff's Complaint alleges that the JVA is an enforceable agreement that transferred Defendant's intellectual property to Fearless (Doc. No. 1 at ¶ 16, 19), and in turn, Fearless transferred that intellectual property to Nashville Supergroup (*id.* at ¶¶ 27-31). Further, as previously discussed, Defendant's defense to Plaintiff's allegations is that "Nashville Supergroup does not have authority to use the intellectual property at issue." (Doc. No. 21 at 16). Thus, this requested declaration, which again seeks to determine the enforceability and terms of the JVA and JVFA, would be redundant of the issues already pending before the Court in this case.

Third, Defendant seeks a declaration that he "did not consent to or sign the JVFA, so the JVFA is unenforceable and did not grant Nashville Supergroup the right to use any intellectual property owned or controlled by Fearless." (Doc. No. 33 at ¶ 68). In almost identical language, Defendant asserts an affirmative defense to Plaintiff's Complaint that he "did not sign the JVFA, so the JVFA is unenforceable and did not transfer any intellectual property to Nashville Supergroup." (Doc. No. 21 at 16). The crux of Plaintiff's Complaint is that the JVFA is an enforceable agreement that "clearly" gives Plaintiff the "right to use the intellectual property" at issue. (Doc. No. 1 at ¶¶ 66, 108). Defendant's declaration is redundant because it asks this Court

to hold that the JVFA is unenforceable even though the Court necessarily would need to decide on such enforceability (or lack thereof) when ruling on Plaintiff's claims and Defendant's defenses.

Finally, Defendant seeks a declaration that "the JVFA is an unenforceable agreement to agree, so the JVFA did not grant Nashville Supergroup the right to use any intellectual property owned or controlled by Fearless." (Doc. No. 33 at ¶ 68). Again, similar to the other requested declarations, Defendant has simply recycled portions of his Answer to Plaintiff's Complaint and styled them as a request for a declaratory judgment. In response to Plaintiff's Complaint, Defendant alleges that "the JVFA (Doc. 1-1) is an unenforceable agreement to agree that failed to transfer any intellectual property rights to Nashville Super Group [sic]." (Doc. No. 21 at 15). Defendant's request for this declaration is redundant because the Court, to adjudicate Plaintiff's claims, already would need to decide whether the JVFA is an enforceable agreement.

Defendant's Response (Doc. No. 47) to the Motion demonstrates that there is a complete overlap of "factual and legal issues between the [C]omplaint and the counterclaim." *Mistica Foods*, 2016 WL 3878256, at *3. When analyzing the *Grand Trunk* factors, Defendant argues that granting his counterclaim would resolve Plaintiff's Complaint—in other words, he argues that Plaintiff "cannot succeed on its defamation and tortious interference claims if" Defendant's declaratory judgment is granted. (Doc. No. 47 at 7). All this argument does is show that Defendant's counterclaim seeks a declaratory judgment resolving Plaintiff's Complaint, which renders Defendant's counterclaim redundant and warrants dismissal. "A redundant counterclaim is better handled through the normal course of litigation rather than a declaratory judgment counterclaim," *American Clothing*, 2021 WL 722730, at *6, and the Court will address Plaintiff's claims and Defendant's defenses in the normal course of this litigation—not through a request for a

declaratory judgment that consists of Defendant's recycled Answer, the separate adjudication of which would waste judicial resources.[15]

## CONCLUSION

For the reasons discussed herein, Plaintiff's Motion (Doc. No 40) is GRANTED, and accordingly the Amended Counterclaim is DISMISSED.

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE

---

[15] Whether the *Grand Trunk* factors weigh in favor of exercising jurisdiction over the declaratory judgment counterclaim is a moot issue because the Court is dismissing the counterclaim as redundant. Also, this Court need not decide whether the counterclaim states a claim for relief on the merits because, either way, it is redundant of Plaintiff's claims and Defendant's defenses, *i.e.*, even if the counterclaim had merit, this Court would still dismiss it as duplicative of the already pending litigation.